

*aero-contact*

RECEIVED

APR 11 2006

CLERK, U.S. DISTRICT COURT
ANCHORAGE, ALASKA

Ingenieurbüro für Luftfahrtgeräte u. Technologie
Dipl.-Ing. Bernd Rehn – Doberschütz - Am Löschteich 3/6
02694 Malschwitz

- Beratung u. Projektierung
- Schulung
- Vermittlung u. Service
- Wartung v. Luftfahrzeugen
- Konversion u. Verwertung
- Vertrieb v. Ersatzteilen
- Flugunfalluntersuchung

Clerk of Court
United States District Court,
District of Alaska
222 W. 7th Avenue #4
Anchorage, AK 99513-7564

**Dipl.- Ing. Bernd Rehn**
**Doberschütz**
**Am Löschteich 3/6**
**02694 Malschwitz**
**Germany**
Tel.    : +49 (0) 3591 6797-10
Fax    : +49 (0) 3591 6797-21
Mobil  : +49 (0) 172 2846690
e-mail : info@aero-contact.com
Internet : www.aero-contact.com

| Ihr Zeichen / ihre Nachricht vom | mein Zeichen / meine Nachricht vom | ☎ Durchwahl (03591)-6797-11 | Datum 04.04.2006 |
|---|---|---|---|

**Re: United States of America v. Security Aviation**

Dear Ladies and Gentlemen,

I have received a letter from the U.S. Department of Justice, United States Attorney with 3 documents included. In one of the documents I was requested to file my claims in regards of the 8 seized jets or equipment

Herewith I would like to use this opportunity to announce in my claims against Security Aviation. I assume that my spare parts are currently also under arrest at US Marshals Service. According to the instruction on Page 5 of the "Request for judicial issuance of in rem warrant of arrest", I am herewith filing a verified statement identifying my claims.

I. Claims
1. Security Aviation purchased spare parts for L-39 from our warehouse in Minden/NV in the value of $ 316,188.93. Pictures of the parts, taken in our facilities in Minden, NV and the list of spare parts are attached in **"Annex A"**

2. Those spare parts have been not yet paid by Security Aviation. The spare parts have been shipped air cargo by Schenker Intl Reno/Sparks, after the TSA inspection, to Anchorage. An agreement with Schenker said, that the spare parts should be delivered after their arrival in Anchorage only, after my personally instruction to Schenker to release the parts. (It means after I got paid by Security Aviation). The invoices are attached in **"Annex B"**

3. A cargo handling agent released accidentally the part to Security Aviation without my knowledge and without my permission. The statement of the freight forwarder **Schenker Intl.** is attached in **"Annex C"**

4. A number of those spare parts have been already installed in Aircrafts and are now part of the seized aircrafts. A list of concerned spare parts is attached in **"Annex D"**.
However, it is unknown to me if after December 18th 2005 more parts has been removed from our inventory by Security Aviation. An inventory check is necessary.

5. Some defective core spare parts which should be normally returned to me after the delivery of new components from Germany and Minden were still in the hangar at Palmer airport and belonging to me. Obviously those spare parts were also seized. Those parts are listed in **"Annex F"**

6. I had already informed the Anchorage FBI office by phone call and email about my claims. I have also issued on January 6th 2006 a Power of Attorney to Mr. Mark Sheets to act on my behalf and to remove the parts from the hangar in Palmer. Unfortunately the US State Troopers refused to help and required an expensive lawyer assistance, for which I could not see any reason, to get my own parts back. The power of Attorney is attached here as **"Annex E"**

II. Debts of Mr. Mira Slovak.

1. Mr. Slovak owned a L-39ZA ( S/N 633911), which was purchased by Mr Larry Gayler together with another L-39ZA from Slovakia. Mr. Slovak's aircraft had an overheated engine. I was sent in the year 2003 to California for an engine inspection to find out if the engine is still serviceable. I found out that the engine was no good for operation and must be exchanged. I supervised the engine exchange at Thermal airport.

2. For the Target Towing operation at Security Aviation, it was necessary to get another L-39ZA or ZO due to the permissible payload on the wing pylons for the target reeling machine (500kgs) for which the L-39C cannot be used (pylons are limited to 120 kgs only)

3. Knowing that Mr. Slovak was trying to sell his airplane, I have introduced Mr. Slovak to Security Aviation under the circumstances, that if a sale of the airplane will take place, I get the money from Mr. Slovak which he owes me. This was agreed between Security Aviation and Mr. Slovak. However, the approx 13.000 USD for me were accidentally wired by Security Aviation to Mr. Slovak, who finally refused to return the money to Security Aviation or to pay me.

4. Mr. Slovak failed to pay me and refused to do so since 2003. In **"Annex G"** I am including the email exchange between myself, Mr. Slovak and Security Aviation"

If you have further questions, please contact me at the telephone numbers above or
In the time between April 5th and 15th on my US cell phone 775 781 3688 while I am travelling inside the USA.

Respectfully, yours

Bernd Rehn

Subscribed before me this

___04___ day of __April__ 2006
witness my hand and official seal